# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


CHERYL BARRER and WALTER BARRER,
on Behalf of Themselves and Those Similarly
Situated,

        Plaintiffs,

    v.                                 Case No. 3:06-cv-00415-HA

                                      JUDGMENT

CHASE BANK, USA, N.A. and DOES 1
through and including 100

        Defendants.

_____

HAGGERTY, District Judge:

      For the reasons provided in the accompanying Opinion and Order, this matter is

dismissed with prejudice.

      IT IS SO ORDERED.

      DATED this 21 day of February, 2013.


                             Ancer L. Haggerty
                       United States District Judge


JUDGMENT - 1

# Exhibit B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHERYL BARRER and WALTER BARRER,
on Behalf of Themselves and Those Similarly
Situated,

        Plaintiffs,

v.

CHASE BANK, USA, N.A. and DOES 1
through and including 100

        Defendants.

Case No. 3:06-cv-00415-HA

OPINION AND ORDER

HAGGERTY, District Judge:

      Plaintiffs Cheryl and Walter Barrer advance causes of action in this putative class action

against defendant Chase Bank USA, N.A. (Chase or defendant). Plaintiffs allege that Chase

improperly raised the annual percentage rates of interest (APR) on their existing credit card

balances pursuant to a policy known as Adverse Action Repricing (AAR) that was not disclosed

in the cardmember agreements (CMAs). Plaintiffs allege that: (1) Chase violated the Federal

OPINION AND ORDER - 1

Truth in Lending Act (TILA) 15 U.S.C. § 1601 *et seq.*, by issuing misleading CMAs; and (2) Chase violated the implied convenant of good faith and fair dealing under Delaware law because its AAR practice was arbitary, unreasonable or oppressive, and contrary to the reasonable expectations of cardholders.  In 2007 this court adopted a Findings and Recommendation that concluded that defendant's first Motion to Dismiss should be granted.  That ruling was reversed and remanded as the United States Court of Appeals for the Ninth Circuit ruled that, as a matter of law, Chase's CMA was not clear and conspicuous.  Thereafter this court denied Chase's second Motion to Dismiss and Motion for Reconsideration.  Chase now advances a Motion for Summary Judgment [138] and plaintiffs advance a Motion to Certify the Class [127].  Oral argument was held on January 31, 2013.  For the following reasons, Chase's Motion for Summary Judgment is granted and plaintiffs' Motion to Certify the Class is denied.

**BACKGROUND**

The following facts are drawn from the record, and for purposes of defendant's Motion for Summary Judgment, are construed in the light most favorable to plaintiffs, the non-moving party.  Plaintiffs had a joint credit card account with Providian National Bank beginning in or about 2000.[1]  In February 2002, the joint account was sold and transferred to Chase.  After Chase merged with Bank One in July 2004, Chase mailed a new CMA (ADV 2039) to approximately nineteen million of its pre-existing cardholders, including plaintiffs Walter and Cheryl Barrer.

The CMA Chase issued to plaintiffs and others stated that Chase would charge a Preferred (or standard) APR that was either a fixed rate that would not fluctuate, or a variable

---

[1]  Walter Barrer had two accounts with Chase.  The joint account that is the subject of the current lawsuit, and a second account that is not, and will not be discussed further.

OPINION AND ORDER - 2

rate that would change slightly based on fluctuations in the Prime Rate. Chase disclosed in the "Finance Charges" section of the CMA that Chase could also charge a higher "Non-Preferred" (default or penalty) APR if the cardmember failed to pay the amount owed on the credit card or on another Chase account, if the cardmember exceeded their credit line, if the cardmember failed to make a payment to another creditor when due, if a payment to Chase was not honored by the cardmember's bank, or if the cardmember closed their account and failed to timely pay off the account balance. Zevin Decl. Ex. A at 3-4.

Chase also had a practice of raising APRs for reasons not disclosed in the "Finance Charges" section of the CMA. Several pages after the "Finance Charges" section, Chase utilized a "Changes to this Agreement" section in which Chase reserved the right to change "financial terms, such as the APRs and fees" at any time. *Id.* at 5. Chase would notify customers of any change where notification was required by law. *Id.* Chase did not disclose under what conditions it would change APRs pursuant to this section of the CMA. Nowhere did Chase describe or disclose its AAR program in the CMA.

Cheryl Barrer has a general practice of reading credit card agreements, and believes she would have looked at the CMA that is the subject of this lawsuit, but cannot specifically recall reading the CMA. *See, e.g.*, Zevin Decl. Ex. E at 10-11. Cheryl Barrer did not believe Chase could raise their APRs unless plaintiffs exceeded their credit limit, made a late payment, were in default, or made a payment that was not honored. *Id.* at 12. Walter Barrer cannot remember if he read the CMA, but believed Chase could raise their APRs only in response to default or if the card had a variable rate. Zevin Decl. Ex. N at 13-14.

AAR was a practice utilized by Chase to maximize profits and account for risk.

OPINION AND ORDER - 3

Profitably and risk are, for obvious reasons, closely linked in credit card lending.  According to

Chase, the purpose of AAR was "[t]o select accounts that don't deliver hurdle second year

profitability [return on equity (ROE)] and increase their APR to a level at which they meet the

hurdle ROE."  Zevin Decl. Ex. P.  Chase set the hurdle ROE at 18% after tax.  *Id.*  "Accounts that

don't meet profitability hurdles (i.e. their APR is not high enough to compensate for their risk

level) are selected for adverse action notification."  Zevin Decl. Ex. Q at 1.  A February 22, 2005,

business overview described Chase's pricing stategy as "aligned across channels with the

objective of pricing for profitability across all performance, segment, and risk bands - accounts

are moved to price points where profit is maximized."  Zevin Decl. Ex. S at 81.  Though

profitability and risk are interlinked, Chase acknowledged "that targeted accounts are not

necessarily all high risk."  Zevin Decl. Ex. Q at 1.  "Their expected loss rate can be as low as 3-

4%, but if their APR is low and is not sufficient for them to meet profitability hurdles, they will

be repriced."  *Id.*  Chase excluded some accounts from AAR including accounts with a predicted

principal loss of less than 3% and accounts that were less than a year old.  The amounts of the

new APR varied depending on the risk/profitability calculus applied to a particular cardholder.

Lower risk cardholders were usually subjected to smaller increases in their APRs.  *Id.*

At the same time that Chase issued the new CMAs it began a large scale AAR campaign.

Between November 2004 and March 2007, millions of customers were subjected to AAR.  *See,*

*e.g.,* Zevin Decl. Ex. I at 3 (describing how "large scale" repricing was instituted beginning in the

fourth quarter of 2004 and how even though a large number of accounts still had promotional

rates, by the third quarter of 2005, "we are at rough parity in asset yield versus our competitors);

Ex. I at 10 (more than 4.8 million accounts subjected to AAR between April 2004 and March

2006).  Between January 2005 and March 2007, Chase utilized AAR to increase standard APRs

OPINION AND ORDER - 4

by an average of 953 basis points (9.53%).  Zevin Decl. Ex. L at 22.

It appears that Chase's large scale AAR campaign was utilized, in part, to make up for the fact that Chase, or its predecessors, had issued below market-rate APRs on millions of credit cards. *See, e.g.*, Zevin Decl. Ex. I at 3;  Ex. U at 23-24 (noting that pre-merger or "heritage" portfolios "significantly lagged our competitors in asset yield," but after "large scale" AAR leading up to the third quarter of 2005, "we are now at rough parity in asset yield versus our competitors").

Before subjecting an account to AAR, Chase sent a change in terms (CIT) notice that provided customers with the opportunity to opt-out of the increased APRs.  The CIT notices required the cardholder to opt-out of the increased APRs in writing.  If the cardholder opted out, the APR increases would not go into effect, however, the cardholder would not be able to make new purchases and would be required to repay their balance under the existing APR.  Hogan Decl. ¶¶ 32-33.  During the course of the AAR campaigns, the opt-out rate was generally between one and three percent of customers.  Zevin Decl. Ex. R at 139:2-11.  Because a great number of customers complained regarding AAR after the fact, Chase noted a need to revise the CIT notices on several occasions. *See, e.g.*, Zevin Decl. Ex J at 5 ("[r]eprice related calls increased . . . after notification); Ex. K at 3 (complaint volumes increased in response to AAR); Ex. QQ at 2 (noting need to revise "the notice to make opt out options and instructions for contacting Chase easier to read and understand"); Ex. RR at 2 ("[a]dverse action notifications to be redrafted to provide greater clarity to Cardmember on changes and how to opt-out"); Ex. TT at 12 (noting need to "[r]ecreate notices to make them more readable and draw more attention to them").

Noting the need to issue a clearer CIT notice, Chase decided to test a new CIT notice in

OPINION AND ORDER - 5

2006 that made "the changes in terms more visible and easy to read" and allowed cardholders to opt-out of the increased APRs while keeping their account open. Zevin Decl. Ex. UU. However, Chase noted that "we will need to constantly monitor and balance the impact of these changes on complaints/satisfaction on the one hand and profitability on the other hand." *Id.* Chase would "need to closely monitor opt-out rates and attrition to ensure that these changes do not have an unanticipated/large impact on our returns and ability to price for risk." *Id.* According to Chase, "[t]he negative impact of this policy change was threefold: increased call volume, increased opt out rates, and the resulting revenue loss." Zevin Decl. Ex. VV at 1. Thereafter, Chase discontinued the opt-out remain open policy.

In February 2005, Chase sent plaintiffs a CIT notice. The six page CIT provided that "we explain the most important changes in the Summary of New Terms below." Morgan Decl. Ex. A. Section one on page one then states "[i]f any of your regular (standard) interest rates will be changed, they appear in the Amendments part of this notice." *Id.* Under the "Amendments to Your Agreement" section on page two of the CIT notice, Chase explained that the Barrers' APRs would increase substantially. *Id.* However, the CIT notice also provided that the Barrers' could choose not to accept the changes in Section one of the notice if they provided written notice of their decision to opt-out by March 24, 2005. *Id.* The CIT notice stated that Chase's "decision was based in whole or in part on the information obtained in a report from the consumer reporting agency listed below." *Id.* Plaintiffs do not recall reading the CIT notice.

Plaintiffs did not opt-out and the changes went into effect with the April 1, 2005 billing cycle. Plaintiffs maintained a $3,700 credit card balance in March 2005 that was split among three-sub-balances. Zevin Decl. Ex. M at 35-36. Plaintiffs total balance was split among three categories of balance: "purchases" with an APR of 8.99%, "prior purchases" with an APR of

OPINION AND ORDER - 6

14.49%, and "cash" with an APR of 21.49%. *Id.* Plaintiffs' April 20, 2005 credit card statement reflects that Chase increased their preferred APR for each balance to 24.74%. Zevin Decl. Ex. M at 37. This constituted an increase of 1,575 basis points (15.75%) for their purchases APR, an increase of 1,025 basis points (10.25 %) for their prior purchases APR, and an increase of 325 basis points (3.25%) for their cash APR. *Id.*

Upon receipt of the April 20, 2005 statement, plaintiffs called Chase and Chase informed them that the increase was due to something in their credit report. Zevin Decl. Ex. E. Chase then sent Walter Barrer a letter stating that plaintiffs':

> account was selected for the change in interest rates because of the following reason(s).
> - The consumer credit report we received shows outstanding credit loan(s) on revolving accounts that are too high.
> - The consumer credit report we received shows too many recently opened installment/revolving accounts.

Zevin Decl. Ex. O. Plaintiffs do not dispute that they had increased the number of or balances on revolving accounts at the time they were subjected to AAR.

Plaintiffs closed their account, paid off the balance on their credit card, and brought this lawsuit.

## STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is improper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact for trial, but it need not disprove the other party's case. *Anderson v.*

OPINION AND ORDER - 7

*Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Once the moving party meets its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine dispute for trial. *Id.* at 248-49. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (citations omitted).

The court must view the evidence submitted on summary judgment in the light most favorable to the non-moving party. *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824-25 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine factual dispute should be resolved against the moving party. *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).

## ANALYSIS

Plaintiffs allege that: (1) Chase violated § 1637(a) and § 1632 of TILA by issuing misleading CMAs; and (2) Chase violated the implied convenant of good faith and fair dealing under Delaware law because its AAR practice was arbitary, unreasonable or oppressive, and contrary to the reasonable expectations of cardholders.

Chase argues that summary judgment should be granted against plaintiffs on their TILA claims because: (1) plaintiffs' § 1637(a) claim is barred by TILA's statute of limitations; (2) plaintiffs' § 1637(a) claim is foreclosed as a matter of law; (3) plaintiffs' claim for actual damages under §§ 1632(a) and 1637(a) fails because plaintiffs did not detrimentally rely on the CMA; (4) plaintiffs' good faith claim fails under Delaware law on the implied covenant of good faith and fair dealing; and (5)plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is barred by the Delaware banking code.

OPINION AND ORDER - 8

1.   **Plaintiffs' TILA claims**

a.   *Statute of Limitations*

Chase contends that plaintiffs' § 1637(a) claim is barred by TILA's statute of limitations.

TILA requires that "any action" be commenced "within one year from the date of the occurrence

of the violation." 15 U.S.C. § 1640(e). Because the alleged violation here occurred when Chase

sent plaintiffs the CMA in October 2004, Chase contends that plaintiffs' March 24, 2006

Complaint was untimely. However, in the Ninth Circuit, § 1640(e)'s one-year limitations period

may be tolled "until the borrower discovers or had reasonable opportunity to discover the fraud

or nondisclosures that form the basis of the TILA action." *King v. State of Cal.*, 784 F.2d 910,

915 (9th Cir. 1986). Chase argues that plaintiffs had the reasonable opportunity to discover the

alleged nondisclosures when it sent them the CIT notice in February 2005. However, this court

will adopt the approach taken in *Rockwell v. Chase Bank*, whereby TILA's statute of limitations

for open-end credit arrangements tolls until receipt of the first billing statement reflecting the

change-in-terms. No. C 10-1602RSL, 2011 WL 2292353, *5 (W.D. Wash. June 07, 2011)

(following *Goldman v. First Nat. Bank*, 532 F.2d 10, 21 (7th Cir. 1973) and reasoning that with

respect to an open end credit arrangement, the imposition of an increased APR is a necessary

condition for TILA liability). As plaintiffs did not receive a statement reflecting the increased

APRs until April 2005, the March 2006 Complaint was timely.

b.   *Adequacy of Chase's APR disclosure*

Chase contends that plaintiffs' § 1637(a) claim is foreclosed as a matter of law because

the Ninth Circuit held that the disclosure in the CMA contained the information required by 15

U.S.C. § 1637(a) and 12 C.F.R. § 226.

"The Truth in Lending Act is designed 'to assure a meaningful disclosure of credit terms

so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883, 887 (9th Cir. 2009) (quoting 15 U.S.C. § 1601(a)). The act does little to regulate the terms creditors can offer in financial products, but instead requires disclosure. *Id.* In short, TILA was designed to protect consumers from being misled about the cost of credit. *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997).

Section 1637(a) and the Federal Reserve Board's implementing regulation, Regulation Z, 12 C.F.R. § 226, require a creditor, such as Chase, to disclose, among other things:

> (1) The conditions under which a finance charge may be imposed, including the time period (if any) within which any credit extended may be repaid without incurring a finance charge, except that the creditor may, at his election and without disclosure, impose no such finance charge if payment is received after the termination of such time period. If no such time period is provided, the creditor shall disclose such fact.
> (3) The method of determining the amount of the finance charge, including any minimum or fixed amount imposed as a finance charge.
> (4) Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and the corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year.

15 U.S.C. § 1637(a)(1),(3), and (4).

Section 1637(a) and its corresponding section of Regulation Z, 12 C.F.R. § 226.6(a)[2], require a creditor to disclose certain information in initial disclosures including APRs that may be charged. On the other hand § 1632(a) and its corresponding section of Regulation Z, 12 C.F.R. § 226.5(a), require that the information be disclosed "clearly and conspicuously." *Id.* In short, § 1637(a) and § 226.6(a) state what must be disclosed, while § 1632(a) and § 226.5(a) provide for the manner in which it must be disclosed.

---

[2] All citations to Regulation Z are to the 2009 version, prior to its revision under the CARD Act.

Chase argues that because the Ninth Circuit held that Chase adequately disclosed the

APRs permitted by the CMA , plaintiffs' § 1637(a) claim must be denied. This court previously

addressed and rejected this argument in two opinions, one [84] denying Chase's Motion to

Dismiss Plaintiffs' Second Amended Complaint and in another [98] denying Chase's Motion for

Reconsideration. This court noted that at that stage in the litigation, the court was required to

accept plaintiffs' pleadings as true. Because plaintiffs had stated a claim for relief pursuant to §

1637(a), this court did not dismiss that claim. This court reasoned that because the Ninth Circuit

had not addressed all possible § 1637(a) claims, and because plaintiffs had filed a Second

Amended Complaint alleging misleading disclosures, it was possible plaintiffs could prosecute a

valid § 1637(a) claim. The court now revisits that argument.

Because the Ninth Circuit's prior ruling in this case is instructive, especially so in light of

the facts that have emerged, the court quotes at length from the Ninth Circuit's opinion before

analyzing Chase's argument. After analyzing TILA, Comment 11, and Regulation Z, the Ninth

Circuit held that:

> We are persuaded that Chase adequately disclosed the APRs that the Agreement
> permitted it to use simply by means of the change-in-terms provision. That
> provision reserved Chase's right to change APRs, among other terms, without any
> limitation on why Chase could make such a change. The provision thus disclosed
> that, by changing the Agreement, Chase could use any APR, a class of APRs that
> logically includes APRs adjusted on the basis of adverse credit information. Apart
> from the gloss of Comment 11, neither the Act nor Regulation Z require Chase to
> disclose the basis on which it would change or use APRs. Therefore the failure to
> disclose the reason for the change to the Barrers' APR-adverse credit
> information-and that Chase would look up their credit history to acquire that
> information does not undermine the adequacy of Chase's disclosure.
>
> Furthermore, we recently concluded that "a creditor's undisclosed intent to act
> inconsistent with its disclosures is irrelevant in determining the sufficiency of
> those disclosures under section[ ] ... 226.6 [of Regulation Z]." *Id.* at 1122. If that
> is true, it would be odd to say that a creditor's undisclosed intent to pursue a
> particular a course of action consistent with its disclosures, though somewhat
> more specific than the general policy that was disclosed, was not only relevant to
> determining the sufficiency of those disclosures, but actually causes them to

violate section 226.6. . . .

. . . Comment 11 requires the disclosure of the "specific event or events that may result in the increased rate." 12 C.F.R. Pt. 226 Supp. I, par. 6(a)(2) cmt. 11; *see also supra*, at 888-90. Our conclusion that Comment 11 does not require the disclosure of risk-based pricing rests, in part, on the fact that pricing credit on the basis of cardholder risk is how credit card companies normally do business. . . .

Even so, such disclosure must be clear and conspicuous. 12 C.F.R. § 226.5(a)(1); 15 U.S.C. § 1632(a). . . .

Clear and conspicuous disclosures, therefore, are disclosures that a reasonable cardholder would notice and understand. No particular kind of formatting is magical, *see Am. Gen. Fin., Inc. v. Basset (In re Bassett )*, 285 F.3d 882, 886 (9th Cir.2002), but, in this case, the document must have made it clear to a reasonable cardholder that Chase was permitted under the agreement to raise the APR not only for the events of default specified in the "Finance Terms" section, but for any reason at all.

Although "[w]e decide conspicuousness as a matter of law," *Bassett*, 285 F.3d at 885, we need not promulgate here a code of conspicuousness. It is enough to observe that the change-in-terms provision appears on page 10-11 of the Agreement, five dense pages after the disclosure of the APR. It is neither referenced in nor clearly related to the "Finance Terms" section. This provision, as part of the APRs allowed under the contract, is buried too deeply in the fine print for a reasonable cardholder to realize that, in addition to the specific grounds for increasing the APR listed in the "Finance Charges" section, Chase could raise the APR for other reasons.

Therefore, the Barrers have stated a claim because Chase cannot show that, as a matter of law, the Agreement made clear and conspicuous disclosure of the APRs that Chase was permitted to use.

*Barrer*, 566 F.3d at 891-892 (footnotes and excerpts omitted).

At this time, with the benefit of completed discovery and briefing on the merits of Chase's Motion for Summary Judgment, it is apparent that plaintiffs are pursuing a § 1637(a) claim that is not materially distinguishable from the one rejected by the Ninth Circuit in this very case. Plaintiffs argue that Chase's APR disclosures were inadequate and misleading as Chase failed to disclose its AAR practice and what APRs it could impose because its disclosures were unclear and inconspicuous. The essence of plaintiffs' § 1637(a) claim is that Chase failed to disclose

OPINION AND ORDER - 12

"what" it needed to disclose because of "how" it disclosed it. This argument conflates § 1632's "how" requirements into § 1637(a)'s disclosures.

For the purposes of evaluating this argument the court notes that, based on the facts in the record, a reasonable jury could easily conclude that Chase had an existing AAR program at the time it issued its CMA to plaintiffs, and that Chase knew it was likely to raise the APRs on plaintiffs' account as well as millions of other customers based on its AAR program. Additionally, Chase's disclosures in the CMA were not clear and conspicuous as a matter of law. While the court is mindful that risk and profit are closely aligned, the facts suggest that Chase's AAR program was not so much about mitigating risk but about maximizing profit and doing so far beyond the risks Chase incurred by providing credit to its customers. In short, a reasonable jury could, without difficulty, conclude that Chase lured customers with promises of low APRs, knowing Chase would raise them, obscured that fact with a convoluted CMA, and then raised APRs for the sole purpose of increasing Chase's profits. A jury could conclude, that Chase's AAR program was, as plaintiffs argue, a classic "bait and switch."

For purposes of determining whether dismissal of plaintiffs' § 1637(a) claim is warranted as a matter of law, this court remains mindful that "absolute compliance by creditors" is required. *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009). "Even technical or minor violations of the TILA impose liability on the creditor." *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989).

"Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Hydrick v. Hunter*, 500 F.3d 978, 986 (9th Cir. 2007) (citations and internal quotation marks omitted). The intent of this doctrine has been described as maintaining consistency and avoiding reconsideration of matters once decided during the course of a single, continuing lawsuit. *Ingle*

OPINION AND ORDER - 13

*v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005). The doctrine applies in cases in which the issue in question was "decided explicitly or by necessary implication in [the] previous disposition." *Hydrick*, 500 F.3d at 986 (citations and internal quotation marks omitted). Exceptions to the doctrine apply if "(1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000); *see also City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (a district court that has jurisdiction over a case possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient).

This court is bound by the Ninth Circuit's conclusion that "Chase adequately disclosed the APRs that the [CMA] permitted it to use simply by means of the change-in-terms provision." *Barrer*, 566 F.3d at 891. The CMA "reserved Chase's right to change APRs . . . without any limitation on why Chase could make such a change." *Id.* In fact, the Ninth Circuit specifically contemplated the fact that Chase could act with an undisclosed intent. *Id.* at 890. Plaintiffs' § 1637(a) claim, as it has emerged, is in direct conflict with the Ninth Circuit's holding in this case. That the facts may suggest underhanded dealing by Chase, does nothing to alleviate the defect in plaintiffs' claim, as the Ninth Circuit's majority opinion reviewed the change-in-terms provisions on its face alone.

Additionally, this court cannot shoehorn § 1632(a)'s "how" provisions into plaintiffs' § 1637(a) "what" claim. Congress created separate provisions with separate requirements and as is apparent from the Ninth Circuit's holding in this case, one is not necessarily applicable to the next. *See also, Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010) (explaining that TILA's prohibition on misleading disclosures is § 1632(a)'s clear and conspicuous requirement).

OPINION AND ORDER - 14

Judge Graber, in her partial dissent, would have required "Chase to disclose-truthfully and conspicuously-that it maintained a pre-existing program under which it would raise the Barrers' APR if Chase learned of certain specific risk factors, including negative credit events that occurred before the extension of credit" pursuant to § 1637(a) and Regulation Z. *Id.* at 893. However, this court is powerless to adopt Judge Graber's opinion, and is instead bound by the majority. *Maag v. Wessler*, 993 F.2d 718, 720 n.2 (9th Cir. 1993) ("[t]he law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case") (citations and quotations omitted). In my previous rulings, I did not feel so bound as it was yet unclear what the final dimensions of plaintiffs' § 1637(a) claim would be. However, it is now impossible to reconcile plaintiffs' claim with the Ninth Circuit's ruling. Accordingly, judgment must be granted to Chase on plaintiffs' § 1637(a) claim.

c.    *Actual Damages Pursuant to § 1632(a)*

As discussed above, the Ninth Circuit found that the change-in-terms provision of the CMA was not clear and conspicuous. *Barrer*, 566 F.3d at 892. However, § 1632 only allows a plaintiff to recover actual damages. To state a claim for actual damages under TILA, a plaintiff must demonstrate detrimental reliance upon an inconspicuous or unclear disclosure. *In re Smith*, 289 F.3d 1155 (9th Cir. 2002); *see also Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) (holding that plaintiffs must demonstrate detrimental reliance in order to be entitled to actual damages under TILA, by showing that they suffered a loss because they relied on an inaccurate or incomplete disclosure). Because neither plaintiff can recall reading the CMA, Chase contends that they cannot prove detrimental reliance.

Plaintiffs respond that they relied on Chase's initial inadequate disclosures regarding the APRs applicable under the CMA in deciding to accept credit and accrue a balance at a low rate, and then were inadequately informed that Chase could, and subsequently did, almost triple the

OPINION AND ORDER - 15

cost of its credit.  However, as discussed above, Cheryl Barrer cannot specifically recall reading

the CMA, and can only assert that it is her practice to read such agreements and to choose credit

cards based in large part on the APRs offered.  Walter Barrer has read CMAs in the past, but

does not know if he read the CMA at issue in this case.  Proof of detrimental reliance requires a

plaintiff to show that "she would either have secured a better interest rate elsewhere or foregone

the loan completely." *In re Smith*, 289 F.3d at 1157 (quotation omitted).  Absent any testimony

or evidence that either Barrer recalls actually reading the CMA at issue, much less, making

informed decisions based on what was disclosed, a reasonable jury could not conclude that

plaintiffs detrimentally relied on the inadequate disclosures. *Turner v. Beneficial Corp*, 242 F.3d

1023, 1025 (11th Cir. 2001).  Accordingly, summary judgment must be granted to Chase on

plaintiffs' § 1632 claim.

### 2.    **Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claim**

Plaintiffs' Second Claim for Relief is for the alleged breach of the implied covenant of

good faith and fair dealing.  Under Delaware law, the implied covenant of good faith and fair

dealing is construed as attaching "to every contract." *Dunlap v. State Farm Fire and Casualty

Co.*, 878 A.2d 434, 442 (Del. 2005).  This implied covenant prohibits a party in a contractual

relationship "from arbitrary or unreasonable conduct which has the effect of preventing the other

party to the contract from receiving the fruits of the bargain." *Id.* (internal quotation and citation

omitted).  Parties may be liable for breaching the covenant "when their conduct frustrates the

overarching purpose of the contract by taking advantage of their position to control

implementation of the agreement's terms." *Id.* (internal quotation and citation omitted).  "This

quasi-reformation, however, should be a rare and fact-intensive exercise, governed solely by

issues of compelling fairness." *Dunlap*, 878 A.2d at 442 (citation and quotation omitted).

Additionally, a plaintiff "cannot state an implied duty of good faith claim . . . where the subject at

OPINION AND ORDER - 16

issue is expressly covered by the contract." *McCoy v. Chase Manhattan Bank, USA*, 559 F.3d 963, 971 (9th Cir. 2009) *rev'd on other grounds in Chase Bank USA, N.A. v. McCoy*, 131 S.Ct. 871 (2011) (citation and quotation omitted). "Parties have a right to enter into good and bad contracts, the law enforces both," and the implied covenant cannot be used to rewrite a contract to appease a party who got a bad deal. *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2005)

Chase contends that it should be granted summary judgment on plaintiffs' implied covenant claim because the CMA expressly allowed the conduct at issue and it is clear that the parties would not have agreed to proscribe the complained of conduct as the contract specifically allowed it. Additionally, Chase argues that the plaintiffs' expectation that Chase would only increase the APR under limited circumstances was not an objectively reasonable expectation, and plaintiffs' implied covenant claim is barred by § 952 of the Delaware Banking Code, which grants credit card companies a statutory right to amend APR terms with notice and an opportunity to opt out.

        a.     *Express Terms of CMA*

Under the express terms of the CMA, Chase reserved the right to change the APR terms at any time, with notice to plaintiffs. Chase exercised that right, after providing notice to plaintiffs.[3] Because Chase acted pursuant to the technical requirements of the CMA, Chase contends it is entitled to summary judgment. Under Delaware law, a party "cannot state an implied duty of good faith claim . . . where the subject at issue is expressly covered by the contract." *McCoy*, 559 F.3d at 971. "Only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of . . . had they thought to

---

    [3] Though the CIT notice was not a model of clarity, it was not defective as a matter of law and has not been challenged as such. Rather, plaintiffs have limited their claims to the disclosures in the CMA and Chase's undisclosed AAR practice.

OPINION AND ORDER - 17

negotiate with respect to that matter may a party invoke the covenant's protections. *Dunlap*, 878

A.2d at 442. (quoting *Katz v. Oak Industries Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986)).

Plaintiffs contend that the implied convenant requires more than simple adherence to a

contract's terms. The "implied covenant of good faith is the obligation to preserve the *spirit* of

the bargain rather than the letter, and adherence to *substance* rather than form." *Dunlap*, 878

A.2d at 444. Plaintiffs contend that Chase used its position of power to frustrate plaintiffs'

reasonable expectations and deprive them of the fruits of the bargain. Plaintiffs urge this court to

adopt the position taken by the Northern District of California in a recent unpublished opinion.

*In re Chase Bank USA, NA. "Check Loan" Contract Litig.*, MDL No. 2032, No. M:09-CV-2032

MMC, 2009 WL 4063349, at *7-8 (N.D. Cal. Nov. 20, 2009) ("*Check Loan*").

In that case, the plaintiffs alleged that Chase had unilaterally increased the minimum

monthly payments required of consumers paying on fixed rate credit loans with the intent of

triggering penalties or eliminating the accounts, thereby violating the "spirit of the agreements

between Chase" and its customers. The district court held that the claim as plead was adequate to

state a claim for breaching the implied covenant of good faith and fair dealing. *Check Loan*,

2009 WL 4063349, at *7-8. That court examined Delaware law, and rejected Chase's argument

that its contractual right to modify the terms of its agreements with consumers trumped the

plaintiffs' attempt to invoke the implied covenant in the face of those express contractual rights.

*Id*. at *7. The court concluded that the plaintiffs' claim "is not subject to dismissal at the

pleading stage" because the pleadings adequately alleged that Chase may have taken advantage of

its position to control implementation of the agreement's terms. *Id*. (citing *Dunlap*, 878 A.2d at

442).

However, this case is not at the pleading stage, and the court has a full record from which

to evaluate plaintiffs' claim. Though this court has little trouble in concluding that Chase wrote

OPINION AND ORDER - 18

an unclear CMA, knowing it would raise plaintiffs' APRs through AAR, this court cannot

conclude that plaintiffs have a viable implied covenant claim. The CMA at issue specifically

allowed the conduct plaintiffs complain of. Additionally there is no doubt that Chase would not

have agreed to proscribe AAR, had the parties thought to negotiate with respect to the practice, as

Chase specifically reserved its right to increase plaintiffs' APRs knowing full well it would likely

raise them through AAR. While Chase's actions may be underhanded and abusive, they do not

violate the implied covenant as Delaware courts (and the Ninth Circuit) have come to interpret it.

The quasi-reformation permitted by the implied covenant may be used to preserve the spirit of a

contract only where such reformation does not contradict an express term of the contract.

Chase's conduct was expressly allowed under the reservation of rights in the CMA, and this court

is not permitted to override that express contract term. *Nemec*, 991 A.2d at 1126; *Dunlap*, 878

A.2d at 441. Because summary judgment must be granted to Chase on this basis, the court does

not reach the remainder of Chase's arguments and plaintiffs' Motion to Certify the Class must be

denied.

## CONCLUSION

For the foregoing reasons, Chase's Motion for Summary Judgment [138] is GRANTED

and plaintiffs' Motion to Certify the Class [127] is DENIED.

DATED this 21 day of February, 2013.

Ancer L. Haggerty
United States District Judge

# Exhibit C

## APPELLANTS' REPRESENTATION STATEMENT

Plaintiffs, Cheryl Barrer and Walter Barrer, on behalf of themselves and those similarly situated, are represented by the following attorneys:

Matthew J. Zevin
STANLEY • IOLA, LLP
225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:     (619) 235-5306
Facsimile:      (825) 377-8419
e-mail: mzevin@aol.com

Michael D. Braun
BRAUN LAW GROUP PC
10680 West Pico Boulevard, Suite 280
Los Angeles, CA  90064
Telephone:     (310) 836-6000
Facsimile:      (310) 836-6010
e-mail: mdb@braunlawgroup.com

Justine Fischer
Attorney at Law
710 SW Madison Street, Suite 400
Portland, OR  97205
Telephone:     (503) 222-4326
Facsimile:      (503) 222-6567
e-mail:  JFAttyOR@aol.com

Defendant, Chase Bank USA, N.A., is represented by the following attorneys:

Pilar C. French
LANE POWELL PC
601 S.W. Second Ave., Suite 2100
Portland, OR  97204
Telephone:     (503) 778-2170
Facsimile:      (503) 778-2200
E-mail: FrenchP@LanePowell.com

Noah A. Levine
David S. Lesser
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Telephone:     (212) 230-8875
Facsimile:      (212) 230-8888
E-mail: noah.levine@wilmerhale.com